August Gugelmann, SBN 240544
SWANSON McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Attorneys for GUSTAVO ERAZO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>  vs.<br><br>GUSTAVO ERAZO,<br><br>                  Defendant. | Case No. CR 23-0002 CRB<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

     Defendant Gustavo Erazo stands convicted of four counts related to conspiracy and possession with intent to distribute fentanyl, heroin, and cocaine. He submits this memorandum in support of his request that the Court impose the 60-month sentence agreed upon by the parties and recommended by the United States Probation Office.

**I.    Guidelines and PSR**

     Mr. Erazo has no outstanding objections to the PSR and agrees with its guidelines calculations. At adjusted offense level 29 and Criminal History Category I, the advisory guidelines range is 87-108 months. The parties have agreed on a below-guidelines sentence of 60 months, and the Probation Office concurs.

II. **A five-year sentence reasonably reflects Mr. Erazo's history and characteristics and the nature and circumstances of his offense**

Mr. Erazo's history is of a kind that is tragically familiar to the Court. He was born in Honduras and raised, along with five siblings, in extreme poverty; he recounted that he was forced to start working at age 10 and went hungry at times, despite his parents' best efforts to care for the family. PSR ¶ 45. When he was just 12, his older brother was shot and killed. *Id.* at ¶ 46. His family could not afford shoes or uniforms, so he went to school without; he enjoyed learning but was unable to afford to continue his education after he turned 15. *Id.* at ¶¶ 44, 53. Like so many others, he was driven to emigrate by poverty, and he first came to United States around 2000. *Id.* at ¶ 47. He worked for moving companies in Georgia for several years before returning to Honduras to be with his wife; poverty again drove him to return a few years later. *Id.* He sought work unsuccessfully in Georgia and in Vancouver before ending up in San Francisco. *Id.* When he was again unable to find employment, he ultimately turned to helping his codefendant sell drugs. The offense conduct is also of a type all too familiar to the Court. DEA agents investigating Mr. Erazo's codefendant conducted a number of controlled buys from him in the Tenderloin in 2022; thereafter they conducted surveillance and determined that he was using a stash house in Berkeley. They conducted a raid and arrested Mr. Erazo at the stash house in November 2022. *Id*. at ¶¶ 6-16.

A sentence of five years is sufficient in light of Mr. Erazo's history and characteristics. Like many others, he resorted to selling drugs because he could find no other way to support himself. As he explained to the probation officer, "When you do things that you know aren't right, it's not because you want to do something bad, but it's just necessity. I didn't have a place to live. I wish I had been able to do something else for money." *Id*. at ¶ 19. His poverty does not excuse his crimes, but it does help explain his choices and indicates that a five-year sentence is sufficient. This is especially true considering that, following this substantial prison term, Mr. Erazo will be deported back to Honduras, where he will have to endure the poverty and lack of opportunity that drove him to the United States in the first place.

Five years is also sufficient to reflect the offense conduct. Mr. Erazo recognizes that this case involved large quantities of drugs, resulting in an advisory guidelines that is greater than the sentence requested here. However, as multiple courts have recognized, drug quantity is not a reliable indicator of culpability. *See*, *e.g.*, *United States v. Johnson*, 379 F.Supp.3d 1213, 1220 (M.D.Ala. 2019) (noting that "over the past decade, courts have increasingly recognized that 'drug quantity is a poor proxy for culpability'") (citation omitted); *Fifteen Years of Guidelines Sentencing* (United States Sentencing Commission 2004), 50 ("Drug quantity has been called a particularly poor proxy for the culpability of low-level offenders, who may have contact with significant amounts of drugs, but who do not share in the profits or decision-making.").[1] Just so here. Although there were substantial quantities of drugs in the stash house, there is no evidence that Mr. Erazo, a street-level dealer, had anything to do with determining either those quantities or the types of drugs that were stored there. Accordingly, a sentence of five years, despite it being a variance from the guidelines, is sufficient to reflect his role in this offense.

**III.    A five-year sentence is sufficient to reflect the remaining goals of sentencing.**

No longer term of imprisonment is necessary to fulfill the remaining statutory goals of sentencing. Mr. Erazo does not need additional time in custody to deter him; as he candidly told the probation officer, he never wanted to sell drugs to begin with but did it because he lacked other opportunities. Now he wants only to "go back to my country, take care of my son, and teach him not to do the things I did in the past." PSR ¶ 19. A five-year custodial sentence, especially one followed by deportation, is also sufficient to act as a deterrent for others.

A five-year sentence also minimizes unwarranted disparities between similarly-situated defendants. The most obvious point of comparison is codefendant Melvin Diaz, who was sentenced to 78 months. A lower sentence is appropriate for Mr. Erazo because, of the two defendants, Mr. Erazo was the less culpable. *See* PSR Recommendation, 3 (noting Mr. Erazo's lesser culpability). Moreover, Mr. Artega faced a higher guidelines range of 121-151 months, compared to 87-108 months for Mr. Erazo; the 78-month sentence in that matter thus represents

---

[1] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/miscellaneous/15-year-study/15_year_study_full.pdf.

a larger variance from the guidelines than that requested here. A five-year term is also appropriately higher than the sentence imposed on Luis Erazo-Centeno, who Mr. Erazo agrees was less culpable.[2] Finally, a five-year term is in line with punishments handed down nationwide to comparable defendants; according to JSIN data, the average sentence for individuals with Mr. Erazo's guidelines is 65 months. PSR ¶ 77.

IV.     **Conclusion**

Based on the foregoing, Mr. Erazo respectfully requests that the Court impose the five-year sentence agreed upon by the parties and recommended by the Probation Office.

Dated: December 3, 2025                                  Respectfully submitted,

                                                      /s/
August Gugelmann
SWANSON & McNAMARA LLP
Attorneys for Gustavo Erazo

---

[2] Mr. Erazo-Centeno's 56-month sentence reflected both his conduct in this case and a supervised release violation in a separate case (CR 19-0367 CRB).