CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

NICHOLAS M. PARKER (CABN 297860)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7368
    nicholas.parker3@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>GUSTAVO ERAZO,<br><br>    Defendant. | CASE NO. 3:23-CR-00002-002 CRB<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date:  December 10, 2025<br>Hearing Time:  10:00 a.m.<br>Court:  Hon. Charles R. Breyer<br>Courtroom:  6 (17th Floor) |

## I.    INTRODUCTION

On November 16, 2022, officers from the Drug Enforcement Administration (DEA) and San Francisco Police Department (SFPD) arrested the defendant, Gustavo Erazo, and two other individuals as part of a coordinated takedown following several weeks of physical and electronic surveillance and a handful of undercover drug deals. The defendant was arrested outside his stash house in Berkeley as he and one of his co-defendants, Melvin Alexis Diaz Arteaga, were preparing to travel into San Francisco to sell drugs in the Tenderloin. As part of the coordinated takedown, officers seized a large quantity of drugs—including 15 *pounds* of fentanyl (net weight)—from a backpack the defendant was wearing, the stash house, and the defendant's residence in Oakland. Inside the stash house, officers also found two firearms, cash, drug manufacturing and processing equipment, and $1,500 in cash. And at the defendant's

1

residence in Oakland, officers found more drugs and $6,661 in cash, which the defendant has admitted was proceeds of drug sales.

The defendant—whose identity was unknown at the time he was arrested—was initially charged in Alameda County Superior Court and was released from state custody before federal charges could be filed against him. Not long thereafter, the defendant fled to Honduras, where he is from. On January 5, 2023, a federal grand jury indicted the defendant in absentia, charging him with four drug offenses, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)–(B). *See* Dkt. 17. In 2024, the government worked with the Honduran authorities to locate and arrest the defendant in Honduras—and to extradite him to the United States. He made his initial appearance in this case in December 2024 and pleaded guilty to all four counts against him on August 27, 2025, pursuant to a Rule 11(c)(1)(C) plea agreement. *See* Dkts. 74, 102.

The sheer quantity of fentanyl at issue in this case counsels in favor of a lengthy prison sentence. At the same time, the circumstances of the defendant's life, including his sparse criminal record, as well as the sentence his more culpable co-defendant received (78 months) counsel in favor of a meaningful variance. Accordingly, the government submits this sentencing memorandum to advise the Court why it believes the parties' jointly recommended below-Guidelines, but nevertheless significant, sentence of 60 months in custody is a reasonable disposition of this case. The U.S. Probation Office has recommended the same sentence. *See* Dkt. 103 (PSR) at 21.

## II.   DISCUSSION

### A.   Offense Conduct

The government generally agrees with the recitation of offense conduct in the Presentence Investigation Report (PSR) prepared by the Probation Office. *See* PSR ¶¶ 6–16.

#### 1.   Initiation of Investigation

DEA and SFPD officers began investigating Mr. Erazo's co-defendant, Melvin Diaz, in September 2022. *See* PSR ¶ 7. On four separate occasions between September 16, 2022, and October 5, 2022, an undercover SFPD officer bought fentanyl and/or methamphetamine from Mr. Diaz or one of his associates in San Francisco and the East Bay. *See* PSR ¶ 8.

2.      Officers Identify Mr. Diaz's Drug Dealing Routine and Stash House

During their investigation, DEA and SFPD officers learned that Mr. Diaz (i) lived at an address on Peach Street in Oakland; (ii) traveled from Oakland to the Tenderloin and back on a nightly or near-nightly basis; and (iii) stopped for a brief period at a location in Berkeley both before traveling to the Tenderloin and after leaving the Tenderloin but before returning to his residence in Oakland, again on a nightly or near-nightly basis. Based on these patterns, the DEA and SFPD came to believe the location in Berkeley was a stash house where Mr. Diaz was storing the drugs he sold in the Tenderloin. *See* PSR ¶ 9.

Between October 26, 2022, and November 9, 2022, DEA and SFPD officers conducted periodic surveillance of Mr. Diaz from the time he left his residence on Peach Street in Oakland until he arrived in the Tenderloin to sell drugs. Among other things, officers determined that Mr. Diaz regularly left his residence on Peach Street, picked up another man (later determined to be Mr. Erazo) at an address on School Street in Oakland, and that the two men drove to an apartment located at 2130 Ashby Avenue in Berkeley, where they parked, entered Apartment No. 8, and stayed for a brief period before leaving in an Uber, which took them to San Francisco. On multiple occasions during this time frame, officers witnessed Mr. Erazo and Mr. Diaz working together to sell drugs on the streets of the Tenderloin. *See* PSR ¶ 10.

3.      Officers Arrest Messrs. Erazo and Diaz and Seize a Staggering Quantity of Drugs

On November 16, 2022, SFPD and DEA officers conducted a multi-location takedown in Oakland and Berkeley. The defendant was arrested with Mr. Diaz in Berkeley, outside the Ashby Avenue apartment that was, indeed, a stash house the defendant and Mr. Diaz had been using to manufacture and store large quantities of drugs. Inside the Ashby Avenue apartment, and in a backpack the defendant was wearing when he and Mr. Diaz were arrested, officers found more than 18.5 *pounds* (net weight) of drugs, including nearly 15 pounds of fentanyl, as well as lesser (but still significant) quantities of heroin and cocaine, among other substances—all of which the defendant has admitted he possessed with intent to distribute.[1] *See* PSR ¶¶ 11–13; Dkt. 102 (Plea Agreement) at ¶ 2.

---

[1] Officers also seized a smaller quantity of drugs—approximately 1.5 pounds (gross weight), most of which was fentanyl—at the defendant's residence in Oakland, where the third co-defendant, Luis Almicar Erazo-Centeno, was arrested while trying to flush the drugs down the toilet. *See* PSR ¶ 14. Mr. Erazo-Centeno pleaded guilty to being an accessory after the fact in May 2023 and was sentenced to 56 months in custody. *See* Dkts. 45–46, 57–58.

Figure 1: Drugs Seized on November 16, 2022



Officers also seized (i) from the Berkeley stash house, in which there was no furniture or other indicia of occupancy: two semi-automatic firearms, a loaded high-capacity magazine, various indicia of drug trafficking—*e.g.*, cutting agents, packaging materials, and a hydraulic press commonly used to prepare fentanyl for sale—and $1,500 in cash; and (ii) from the defendant's Oakland residence: $6,661 in cash. *See* PSR ¶¶ 12, 14. All told, officers seized—and the defendant has agreed to forfeit his interest in—$50,086 in connection with the arrest of the defendant and his two co-defendants. *See* PSR ¶¶ 13–14 (noting that officers seized nearly $42,000 at Mr. Diaz's residence); Dkt. 102 at ¶ 12.

**B.    Procedural History**

The defendant was originally charged by criminal complaint on November 18, 2022, with one count of possession with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vi), but he never appeared on that complaint because he fled to Honduras before he could be arrested on it. Ultimately, the defendant was indicted on January 5, 2023, on four counts charging a range of drug offenses under 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)–(B) and relating to the seizures on November 16, 2022 (Counts 2–4), as well as an overarching conspiracy (Count 1). *See* Dkt. 17. The defendant first appeared in this case on December 20, 2024. *See* Dkt. 74.

Pursuant to a plea agreement with the government, the defendant pleaded guilty on August 27, 2025, to all four counts against him. *See* Dkts. 101–102. As part of his guilty plea, the defendant agreed, among other things (i) to the Guidelines calculation noted below; (ii) to forfeit his interest in $50,086 in cash seized on the date of his arrest; (iii) that the guns and ammunition found in the Ashby Avenue stash house are subject to forfeiture, although he disclaims any interest in them; (iv) to recommend a custodial sentence of 60 months; and (v) that the Probation Office should impose a special search condition for any period of supervised release. *See* Dkt. 102 at ¶¶ 7–9, 12. In exchange for the defendant's guilty plea, the government agreed, among other things, to recommend the same custodial sentence: 60 months. *See* Dkt. 102 at ¶¶ 8, 17. The defendant has been in continuous custody on these charges since he was arrested in Honduras in connection with the extradition proceedings in November 2024. *See* PSR at 2.

Mr. Diaz pleaded guilty to the six counts charged against him in October 2023. *See* Dkts. 64–65. In February 2024, this Court sentenced Mr. Diaz—whose Guidelines range (121–151 months) was considerably higher than the defendant's (87–108 months)—to 78 months in custody. *See* Dkts. 67, 69–70.

### C.   Sentencing Guidelines Calculation

The government agrees with the Probation Office's calculation of the Sentencing Guidelines. *See* PSR ¶¶ 20–32, 59. Specifically, the government agrees that the Base Offense Level is 34 based on the net drug weights and that a two-level enhancement is warranted for the defendant's maintenance of a stash house. *See id.* at ¶¶ 21–23. However, the government also agrees that certain reductions are appropriate, including for the defendant's status as a "zero-point offender" and for his acceptance of responsibility, such that the Total Offense Level is 29. *See id.* at ¶¶ 24, 29–32.

The government also agrees with the finding of the Probation Office that the defendant has zero criminal history points, placing him in Criminal History Category I. *See* PSR ¶¶ 33–37. A total offense level of 29, at Criminal History Category I, yields an advisory sentencing range of 87 to 108 months of imprisonment. *See* PSR ¶ 59; U.S.S.G. ch. 5, pt. A.

### D.   Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence

by calculating the correct sentencing range under the Sentencing Guidelines. *See id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *See id.* at 991-93.

In arriving at the appropriate sentence for Mr. Erazo, and in light of 18 U.S.C. § 3553(a), the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(5) the need to provide restitution to any victims of the offense.

**E.    Recommended Sentence and Section 3553(a) Factors**

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a below-Guidelines, but still significant sentence of 60 months in custody, to be followed by five years of supervised release. Such a sentence would be sufficient, but not greater than necessary, to reflect the purposes of sentencing, in consideration of, among other things, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentencing disparities among similarly (though not identically) situated defendants—including Mr. Diaz, whose offense level, Criminal History Category, and applicable Guidelines range were all higher than Mr. Erazo's.[2] In addition, the defendant has agreed to forfeit his interest in $50,086 seized on the date of his arrest, that the guns and ammunition found in the Ashby Avenue stash house are subject to forfeiture, and that an expanded search condition may be

---

[2] Indeed, Mr. Diaz's 78-month sentence was a downward variance of approximately 35% below the low end of his Guidelines range (121–151 months). Meanwhile, the parties' jointly recommended 60-month sentence for Mr. Erazo represents a downward variance of approximately 31% below the low end of his Guidelines range (87–108 months).

imposed during any term of supervised release. *See* Dkt. 102 at ¶¶ 9, 12. Given the nature of this offense, the requested condition is necessary to serve the interests of deterrence and rehabilitation.

The government acknowledges that the defendant grew up—like many in Honduras—in abject poverty, and that his childhood was marked by trauma, including the murder of his brother when the defendant was 12. *See* PSR ¶¶ 43–46. The government also recognizes that Mr. Erazo may have turned to drug dealing as a last-ditch effort to provide for his family when he couldn't find legitimate employment in the United States. *See* PSR ¶¶ 19, 47. And the government applauds the defendant for promptly and unequivocally taking responsibility for his criminal conduct in this case following his extradition from Honduras. Each of these factors, and certainly all of them together, warrant a downward variance from the advisory Sentencing Guidelines range of 87–108 months and imposition of a below-Guidelines sentence.

Nevertheless, the fact remains that Mr. Erazo—who, unlike many defendants who come before the Court to be sentenced, was *not* abused as a child, does *not* come from a broken or violent home, and does *not* have a history of behavioral or emotional issues, *see* PSR ¶¶ 44–46, 51—made a choice to sell drugs. Where others work multiple jobs to make ends meet or struggle to get by but remain law-abiding members of society, Mr. Erazo turned to crime. At the time he committed this offense, the defendant had access to limitless quantities of fentanyl and significant quantities of heroin and cocaine, among other drugs. The defendant's devotion to his family—including his three children, his wife, and his aging parents—is as laudable as his motivations for turning to crime may be understandable, but it does not excuse his conduct. *See* PSR ¶¶ 48–49. Not everyone who grows up in poverty or who struggles to find work takes the easy way out by breaking the law. That is what Mr. Erazo did, and he must face the consequences of that choice.

### III.    CONCLUSION

For the foregoing reasons—and in full consideration of the applicable Sentencing Guidelines, the goals of sentencing, and the factors set forth in 18 U.S.C. § 3553(a)—the government respectfully requests that the Court sentence the defendant to 60 months in custody, to be followed by five years of supervised release. Such a sentence accounts not only for the defendant's status as a drug dealer with access to a seemingly bottomless supply of fentanyl, but also for the difficult circumstances of the

defendant's upbringing and his status as a first-time offender. The government also requests that the Court include the expanded search condition to which the defendant has already agreed among the conditions of his supervised release (should he not be deported following his release from custody). The defendant shall also forfeit his interest in $50,086 seized on the date of his arrest and pay a mandatory special assessment of $400 ($100 per count).

DATED: December 3, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

 /s/ *Nicholas Parker*
NICHOLAS M. PARKER
Assistant United States Attorney